UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| OLIVER JASON SHINGLER, | ) | CIVIL ACTION NO. 4:20-CV-01344 |
| Plaintiff | ) | |
| | ) | (ARBUCKLE, M.J.) |
| v. | ) | |
| | ) | |
| KILOLO KIJAKAZI,[1] | ) | |
| Defendant | ) | |

MEMORANDUM OPINION

## I.    INTRODUCTION

Plaintiff Oliver Jason Shingler, an adult individual who resides within the Middle District of Pennsylvania, seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income under Title XVI of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §405(g).

This matter is before me, upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 9). After reviewing the parties' briefs, the Commissioner's final decision, and the relevant

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security. Under Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Commissioner Andrew Saul as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. 405(g).

portions of the certified administrative transcript, I find the Commissioner's final decision is supported by substantial evidence. Accordingly, for the reasons stated herein the Commissioner's final decision is AFFIRMED.

## II.   BACKGROUND & PROCEDURAL HISTORY

On October 12, 2017, Plaintiff protectively filed an application for supplemental security income under Title XVI of the Social Security Act. (Admin. Tr. 11).  In this application, Plaintiff alleged he became disabled as of January 1, 2013, when he was 35 years old, due to the following conditions: residual pain from a broken neck, post-traumatic stress disorder ("PTSD"), brain damage, sleep apnea, bipolar disorder, attention deficit hyperactivity disorder ("ADHD"), personality disorder, explosive anger disorder, and high blood pressure. (Admin. Tr. 252). Plaintiff alleges that the combination of these conditions affects his ability to lift, squat, bend, stand, reach, walk, sit, kneel, talk, climb stairs, complete tasks, concentrate, follow instructions, get along with others, and remember things. (Admin. Tr. 282). Plaintiff graduated high school in 2000 and participated in the regular education program. (Admin. Tr. 253). Before the onset of his impairments, Plaintiff's past relevant work included employment as a sandblaster. (Admin. Tr. 20).

On January 24, 2018, Plaintiff's application was denied at the initial level of administrative review. (Admin. Tr. 11). On March 23, 2018, Plaintiff requested an administrative hearing. *Id*. On March 15, 2019, Plaintiff, assisted by his counsel, appeared, and testified during a hearing before Administrative Law Judge Matthew C. Dawson (the "ALJ"). (Admin. Tr. 22). On May 14, 2017, the ALJ issued a decision denying Plaintiff's application for benefits. *Id*. On June 26, 2019, Plaintiff requested review of the ALJ's decision by the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council"). (Admin. Tr. 6). On June 5, 2020, the Appeals Council denied Plaintiff's request for review.  (Admin. Tr. 1).

On August 3, 2020, Plaintiff initiated this action by filing a Complaint. (Doc. 1). In the Complaint, Plaintiff alleges that the ALJ's decision denying the application is not supported by substantial evidence, and improperly applies the relevant law and regulations. *Id.* As relief, Plaintiff requests "such relief as may be proper." (Doc. 1).

On February 16, 2021, the Commissioner filed an Answer. (Doc. 14). In the Answer, the Commissioner maintains that the decision denying Plaintiff's application was made in accordance with the law and regulations and is supported by substantial evidence. (Doc. 14). Along with her Answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 15).

Plaintiff's Brief (Doc. 16), the Commissioner's Brief (Doc. 17), and Plaintiff's Reply (Doc. 18) have been filed.  This matter is now ripe for decision.

## III.   STANDARDS OF REVIEW

### A.   SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision]

from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

"In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before this Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

B.   STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

Page 5 of 33

be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 416.905(a).[2] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. § 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. § 416.920(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations

---

[2] Throughout this Report, I cite to the version of the administrative rulings and regulations that were in effect on the date the Commissioner's final decision was issued. In this case, the ALJ's decision, which serves as the final decision of the Commissioner, was issued on May 14, 2019.

caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 416.920(e); 20 C.F.R. § 416.945(a)(1). In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 416.945(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. 42 U.S.C. § 1382c(a)(3)(H)(i) (incorporating 42 U.S.C. § 423(d)(5) by reference); 20 C.F.R. § 416.912; *Mason*, 994 F.2d at 1064.  Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. § 416.912(b)(3); *Mason*, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the

basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id.* at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999).

IV.   DISCUSSION

Plaintiff raises the following arguments in his statement of errors:

(1)   Whether the ALJ's RFC is contrary is contrary to law and not supported by substantial evidence because the ALJ failed to consider Plaintiff's need for a sheltered work environment. (Doc. 16 p. 4).

(2)   Whether the ALJ's RFC is contrary is contrary to law and not supported by substantial evidence because the ALJ failed to properly evaluate the medical opinion evidence. *Id.*

(3)   Whether the ALJ's RFC is contrary is contrary to law and not supported by substantial evidence because the ALJ failed to fully account for the practical effects of his "severe" intermittent explosive disorder (IED). *Id.*

A.   THE ALJ'S DECISION DENYING PLAINTIFF'S APPLICATION

In his May 2019 decision, the ALJ evaluated Plaintiff's application at steps one through five of the sequential evaluation process.

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity at any point between October 12, 2017 (Plaintiff's alleged onset date) and

Page 8 of 33

May 14, 2019 (the date the ALJ decision was issued) ("the relevant period"). (Admin. Tr. 12).

At step two, the ALJ found that, during the relevant period, Plaintiff had the following medically determinable severe impairments: obstructive sleep apnea ("OSA"); cervical degenerative disc disease; occipital neuralgia; ADHD; PTSD; bipolar disorder; personality disorder; neurocognitive disorder; alcohol and cannabis use disorder (in remission); intermittent explosive disorder; and borderline intellectual functioning ("BIF"). (Admin. Tr. 13). The ALJ also identified several non-severe, and non-medically determinable impairments at this step. He found that the diagnosed conditions of hyperlipidemia and hypertension were non-severe, and that the conditions of restless leg syndrome and chest pain were not medically determinable. *Id.*

At step three, the ALJ found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Admin. Tr. 14).

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ found that, during the relevant period, Plaintiff retained the RFC to engage in light work as defined in 20 C.F.R. § 416.967(b) except that:

> [He] can occasionally balance, stoop, kneel, crouch, crawl, and climb.
> The claimant can have exposure to extreme cold, extreme heat, and
> humidity, but should avoid all exposure to moving mechanical parts
> and unprotected heights. In addition, he can understand, remember, and
> carry out simple instructions, perform routine tasks requiring only
> simple judgment, and have occasional interaction with supervisors,
> coworkers, and general public. Further the claimant can tolerate
> occasional changes in the work setting, but should avoid fast-paced
> work such as assembly line work or work requiring hourly quotas.

(Admin. Tr. 15).

At step four, the ALJ found that, during the relevant period, Plaintiff could

not engage in his past relevant work. (Admin. Tr. 20).

At step five, the ALJ found that, considering Plaintiff's age, education and

work experience, Plaintiff could engage in other work that existed in the national

economy. *Id.* To support his conclusion, the ALJ relied on testimony given by a

vocational expert ("VE") during Plaintiff's administrative hearing and cited the

following three (3) representative occupations: housekeeping cleaner (DOT

#323.687-014), merchandise marker (DOT #209.587-034), and photocopy machine

operator (DOT #207.685-014). (Admin. Tr. 21).

B.   WHETHER THE ALJ IMPROPERLY EXCLUDED A LIMITATION TO
     "SHELTERED" WORK FROM THE RFC ASSESSMENT

Plaintiff worked at Giant Food Stores part-time in September 2017. (Admin.

Tr. 12). On April 5, 2018, the store manager of the Giant submitted a work activity

questionnaire. (Admin. Tr. 324-325). On that Questionnaire, the store manager

indicated that: (1) Plaintiff did not complete all of the usual duties required for his position; (2) Plaintiff was not able not complete all of his job duties without special assistance; (3) Plaintiff regularly reported to work as scheduled; and (4) Plaintiff did not complete his work in the same amount of time as employees in similar positions. The store manager also indicated Plaintiff was given "special assistance" not regularly given to other employees, including: fewer or easier duties; less hours; lower production standard; and extra help/supervision. The store manager also indicated that Plaintiff's rate of productivity was 50% of less when compared to other employees.

The ALJ considered this questionnaire at two parts of the sequential evaluation process. First, at step one, the ALJ, relying on this questionnaire, described Plaintiff's janitorial position as "sheltered" because he "receives fewer duties, less hours, lower production standards, and extra help/supervision." (Admin. Tr. 13). Second, the ALJ considered this questionnaire when he formulated Plaintiff's RFC assessment, and concluded that it was "not persuasive." In doing so, the ALJ explained:

> The undersigned finds this opinion is not persuasive when considered in light of the entire record in this case. Indeed, even assuming the manager's conclusory explanations accurately state the claimant's current work arrangement, such lack of productivity and apparent inability to perform simple, unassisted job tasks stand in stark contrast to the self-directed home improvement projects the claimant effectively

(and independently) performs at home. If anything, this opinion is more in line with Dr. Hartey's observations that the claimant has a "tendency to over-identify problems" and to "exaggerate[e] . . . [his] symptoms" (B2F/6.) Further undercutting this opinion's persuasiveness is the fact that the claimant is able to perform routine activities independently. For these reasons, then, the checkbox form at Exhibit B17E is not persuasive.

(Admin. Tr. 19).

Plaintiff's first argument is two-fold. First, Plaintiff argues that discussion of "sheltered work" at step one is internally inconsistent with the ALJ's conclusion that Plaintiff is not disabled. Second, Plaintiff also argues that the three reasons cited by the ALJ in support of his finding that the questionnaire was not persuasive are not supported by the record.

      1.    The ALJ's Assessment that the Janitorial Position is "Sheltered Employment" at Step One is Not Internally Inconsistent with the ALJ's Conclusion that Plaintiff is Not Disabled

"The regulations describe sheltered work as work 'done under special conditions[]", including that the claimant received special assistance, required special equipment, was allowed to work irregular hours or take frequent rest periods, and was permitted to work at a lower standard of productivity or efficiency than other employees." *Estrella v. Colvin*, 174 F.Supp.3d 1090, 1105 (D. Ariz. 2016) (citing 20 C.F.R. § 416.973(c) and SSR 83-33, 1983 WL 31255, at *7 ("Sheltered employment is employment is employment provided for handicapped individuals in

a protected environment under an institutional program.")); *see also Browning v.*

*Colvin,* 766 F.3d 702, 704 (7th Cir. 2014) (describing "sheltered employment as a

"euphemism for work that the job market would not consider productive

employment."). 20 C.F.R. § 416.973(c) provides that:

> <u>If your work is done under special conditions, we may find that it does</u>
> <u>not show that you have the ability to do substantial gainful activity.</u>
> Also, if you are forced to stop or reduce your work because of the
> removal of special conditions that were related to your impairment and
> essential for your work, we may find that your work does not show that
> you are able to do substantial gainful activity. <u>However, work done</u>
> <u>under special conditions may show that you have the necessary skills</u>
> <u>and ability to work at the substantial gainful activity level.</u>

(emphasis added). "[A]n employee engaged in sheltered employment ordinarily will

be considered as not engaged in SGA if 'countable earnings' do not exceed the

primary amount." SSR 83-33, 1983 WL 31255 at *3.

At step one of the sequential evaluation process, the ALJ found:

The claimant worked after the application date but this work activity
did not rise to the level of substantial gainful activity. A new hire query
indicates the claimant was hired at Giant Food Stores LLC in
September 2017 (Exhibit B9D). During the hearing, the claimant
testified he is working as a janitor for this company on a part-time basis,
or 10-15 hours per week. The hew hire query reveals the claimant
earned $80 in the third quarter of 2017 and $292 in the fourth quarter
of 2017. Pay stubs submitted by the claimant show he earns $10.00 per
hour and receives a weekly check averaging between $310 and $200
(Exhibits B10D; B11D). According to the store manager, the claimant
does not complete all the usual duties required for his positions nor does
he complete his work in the same amount of time as employees in
similar positions (Exhibit B17E). Specifically, the claimant receives

fewer or easier duties, less hours, lower production standards, and extra help/supervision.

According to the Administration, an individual eligible for disability benefits must be unable to engage in substantial gainful activity (SGA). The amount of monthly earnings considered to be SGA was $1,170 per month in 2017, $1,180 per month in 2018, and $1,200 per month in 2019. Review of the claimant's paystubs demonstrate his earnings do not constitute that of SGA. Furthermore, based on the store manager's report, it appears the claimant's work is sheltered. Thus, the undersigned finds the claimant has not engaged in disqualifying SGA since the application onset date.

(Admin. Tr. 12-13).

In his brief, Plaintiff suggests that the ALJ's step one conclusion that Plaintiff was *currently engaged in* "sheltered" employment is internally inconsistent with the ALJ's conclusion that Plaintiff is *able to engage in* other work that exists in the national economy. I am not persuaded by Plaintiff's position that the ALJ's characterization of Plaintiff's janitorial work as "sheltered" at step one is internally inconsistent with a finding of non-disability. Although "a person capable of working *only* in sheltered employment is deemed disabled and therefore entitled to receive social security benefits," *Browning*, 766 F.3d at 704, the regulation leaves open the possibility that persons engaged in sheltered employment who are capable of more may be found not disabled. Furthermore, an ALJ's decision to credit the store manager's description of Plaintiff's *current* work environment is not inconsistent

with a determination that, considering the record as a whole, Plaintiff would be capable of more than he is currently doing.

> 2.  Whether the ALJ Is Required To Explain Why The Limitations Set Forth in the Store Manager's Questionnaire Were Discounted

In response, the Commissioner first suggests the "manager's report did not constitute a medical opinion that the ALJ was required to evaluate pursuant to the Commissioner's recently changed regulations regarding medical opinion evidence." (Doc. 17, p. 19). The Commissioner is correct that the store manager is a nonmedical source. *See* 20 C.F.R. § 416.902(c)(4) (listing an "employer" as a nonmedical source); 20 C.F.R. § 416.913(a)(4) (defining evidence from non-medical sources). Under 20 C.F.R. § 416.920c(d), the ALJ is "not required to articulate how [he or she] considered evidence from nonmedical sources using the requirements in paragraphs (a) through (c) in this section." Other courts have held, and I agree, that 20 C.F.R. § 416.920c(d) does not eliminate the articulation requirement altogether. In support of this interpretation, one court explained:

> Some courts seem to embrace the ALJ's position, suggesting that Section[s 1520c(d) and 920c(d)] no longer require[] an ALJ to articulate how she considered evidence from nonmedical sources. *See e.g.*, *Pamela M. v. Kijakazi*, No. 20 CR 5479, 2021 WL 4461546, at *11 (N.D. Cal. Sept. 29, 2021) (noting that under amended regulations ALJs are "not required to articulate how [they] considered evidence from nonmedical sources") (internal quotations and citations omitted); *Cole v. Kijakazi*, No. 20 CV 733, 2021 WL 3887463, at *11 (N.D. Ala. Aug. 31, 2021) ("Under the new regulations, an ALJ does not have to

explain how she weighed of considered nonmedical evidence."). However, Section[s 1520c(d) and 920c(d) merely state[] that an ALJ "is not required to articulate how [she] considered evidence from nonmedical sources *using the requirements in paragraphs (a)-(c) of this section.*" *Garling [v. Kijakazi*, No. 20 CV 369, 2021 WL 3728544, at *6 (N.D. Ind. July 20, 2021)] (citing 20 C.F.R. § 404.1520c(d) (emphasis added)). The plain language of the regulation therefore does not eliminate the articulation requirement altogether, as the government argues here. *Id.* (finding unpersuasive the argument that section 1520c(d) does not require ALJ to articulate consideration of nonmedical evidence because "that statement does not follow from the applicable law").

*Andrew L. v. Kijakazi*, No. 20-CV-1609, 2021 WL 5447035, at *3 (N.D. Ill. Nov. 22, 2021). The reasoning in *Andrew L.* is consistent with the Commissioner's regulations as well as with Third Circuit caselaw. For example, in *Cotter v. Harris*, the Third Circuit recognized that there is "a particularly acute need for some explanation by the ALJ when s/he has rejected relevant evidence or when there is conflicting probative evidence in the record." 642 F.2d 700, 706 (3d Cir. 1981). In defining the parameters of this obligation, the Circuit explained:

> [i]n our view and examiner's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision. This is necessary so that the court may properly exercise its responsibility under 42 U.S.C. § 405(g) to determine if the Secretary's decision is supported by substantial evidence.

*Id.* at 705 (quoting *Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974). In its opinion denying a rehearing in *Cotter*, the Circuit further elaborated that "in most

Page 16 of 33

cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481 (3d Cir. 1981).

In this case, however, the ALJ did provide an explanation for his decision to exclude the full measure of limitation set forth by the store manager in the questionnaire. Therefore, I turn to Plaintiff's argument, that the limitations set forth in the questionnaire were improperly excluded from the ALJ's RFC assessment.

> 3.    Whether the ALJ Properly Excluded The Limitations set forth in the Store Manager's Questionnaire from the RFC Assessment

Plaintiff argues that the ALJ's rejection of statements by Plaintiff's store manager that Plaintiff would be limited to "sheltered" work is not supported by substantial evidence. The Commissioner disagrees.

One oft-contested issue in this setting relates to the claimant's residual capacity for work in the national economy. As discussed above, a claimant's RFC is defined as "the most [a claimant' can still do despite [his or her] limitations," taking into account all of a claimant's medically determinable impairments. 20 C.F.R. § 416.945. In making this assessment, the ALJ is required to consider the combined effect of all medically determinable impairments, both severe and non-severe. 20 C.F.R. § 416.945. Although such challenges most often arise in the context of challenges to the sufficiency of vocational expert testimony, the law is clear that an RFC assessment that fails to take all of a claimant's credibly established limitations

Page 17 of 33

into account is defective. *See Rutherford v. Barnhart*, 399 F.3d 546, 554 n. 8 (3d Cir. 2005) (noting that an argument that VE testimony cannot be relied upon where an ALJ failed to recognize credibly established limitations during an RFC assessment is best understood as a challenge to the RFC assessment itself); *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 147 (3d Cir. 2007) (noting that an ALJ must include in the RFC those limitations which he finds to be credible).

Moreover, because an ALJ's RFC assessment is an integral component of his or her findings at steps four and five of the sequential evaluation process, an erroneous or unsupported RFC assessment undermines the ALJ's conclusions at those steps and is generally a basis for remand.

As an initial matter, I note that "sheltered" work is not a particular limitation, but rather a description of a type of work that allows for accommodation that would not be tolerated in a customary work setting. The actual limitations at issue in this case, as set forth by the store manager's questionnaire appear to be a need for special supervision, having few or easier duties, low (50% or less of other employees productivity) production standards, and less hours. (Admin. Tr. 324-325). The ALJ in this case did limit Plaintiff to work requiring no more than simple instructions, routine tasks with only occasional changes, and without high hourly production quotas.

The ALJ cited three reasons in support of his conclusion that these limitations were not credibly established: (1) the store manager's statements are inconsistent with Plaintiff's ability to engage in self-directed home improvement projects; (2) the store manager's observations are "in line" with Dr. Hartey's opinion that Plaintiff had a tendency to over-identify problems and "exaggerate; and (3) Plaintiff is able to perform routine activities independently. (Admin. Tr. 19).

During a consultative examination, Psychologist Jennifer L. Hartey, Ph.D. ("Dr. Hartey") administered "the forced-choice portion of the CVLT-II and showed no signs of purposeful invalid responses or performance/malingering." (Admin. Tr. 360). However, in her formal assessment findings, under the heading "Emotional Functioning" Dr. Hartey wrote:

> Mr. Shingler was administered an objective personality measure. However, this could not be scored, as his responses were deemed invalid due to his tendency to over-identify problems, even ones that could not be truly existing for him. This exaggeration of symptoms can be due to someone truly attempting to be deceitful about their symptoms for some other gain, or due to feeling overwhelmed and helpless at the time that he completed the testing, and the responses were more like a cry for help/wanting someone to understand how in distress he was. Given that the validity testing for the cognitive portions of the evaluation did not show any efforts to exaggerate or fake his performance, then it is quite likely it is the second option here.

(Admin. Tr. 362).

Plaintiff argues that the ALJ's description of the above-quoted passage as demonstrating a tendency to exaggerate his symptoms and overidentify his problems is not an accurate representation of Dr. Hartey's statement, and that an accurate reading of the statement does not support the ALJ's rejection of the store manager's questionnaire. (Doc. 16, pp. 10-11). In a footnote, the Commissioner responds that the ALJ accurately characterized all portions of the opinion when the decision is read as a whole. I agree that the ALJ did accurately characterize the opinion on a different page, (Admin. Tr. 18), the portion of the opinion cited in support of discounting the questionnaire, however, did not. I agree with Plaintiff that the second reason cited by the ALJ is not supported by the record. However, the first and third reasons are.

With respect to the first reason—Plaintiff's ability to complete home improvement projects—the ALJ's assessment is based on the hearing testimony of Plaintiff's girlfriend, Ms. Crago. During the administrative hearing, Ms. Crago testified:

> that the claimant installed a subfloor in their home, with only minimal assistance from her (she handed him tools and materials) and, she speculated, with only some advice from an employee at the hardware store where he bought supplies. Along similar lines, Ms. Crago elaborated that the claimant installed [a] water heater in their home with her assistance after merely watching a YouTube "how to" video.

(Admin. Tr. 19); (Admin. Tr. 86-97). Although Ms. Crago suggested Plaintiff gets frustrated at times, but that the water heater was completed the same day it was started, and the subfloor replacement was completed within a couple days. Plaintiff's only assistance on either task was from Ms. Crago, who professed no particular skill in either area. The ALJ's inference that Plaintiff's completion of these tasks is inconsistent with statements that would need special supervision, and is limited to 50% or less the productivity rate of a typical employee.

With respect tot the second reason—Plaintiff's daily activities—the ALJ relied on responses to a function report provided by Plaintiff. The ALJ summarized:

> the claimant reported being able to care for pets, perform household chores, generally care for his own personal hygiene/grooming needs with difficulty bending, prepare light meals, shop outside the home twice per week, pay bills, manage finances, go fishing, watch television, and spend time with friends. As mentioned previously, the claimant has been able to work part-time as a janitor since 2017. Progress notes state the claimant was spending time at work and very active (Exhibit B13F/12).

(Admin. Tr. 17). Plaintiff does not address this reason in his brief.

For the reasons explained herein, I am not persuaded that requirements for special supervision, or additional limitations related to Plaintiff's productivity were improperly excluded from the RFC assessment.

C.    WHETHER THE ALJ IMPROPERLY DISCOUNTED DR. HARTEY AND THE
STATE AGENCY CONSULTANT'S OPINIONS THAT PLAINTIFF SHOULD BE
LIMITED TO 1 OR 2 STEP TASKS

In an examination report, Dr. Hartey reported under the hearing "Conclusions

and Recommendations" that Plaintiff would "require repeated lessons and

instructions, given his memory struggles, and may benefit from learning pneumonic

devices and other tricks to help with his memory struggles . . . ." (Admin. Tr. 362).

In an RFC assessment, state agency psychological consultant Jan Melcher,

Ph.D. assessed that Plaintiff would be able to understand and remember very short

and simple instructions, but would have moderate difficulty understanding and

remembering detailed instructions. (Admin. Tr. 117). In support of this assessment,

Dr. Melcher explained:

> The claimant's ability to understand and remember complex or detailed
> instructions is limited, however he would be expected to understand
> and remember simple, one and two-step instructions. He can perform
> simple, routine, repetitive tasks in a stable environment.

*Id.*

The ALJ found both Dr. Hartey and Dr. Melcher's opinions to be persuasive.

In doing so, he explained that:

> Although [Dr. Hartey's] opinion was not rendered in vocationally
> specific terms, the objective and clinical findings remain probative and
> persuasive. Dr. Hartey had the opportunity to meet and examine the
> claimant, and it appears this psychologist adequately considered the
> claimant's subjective complaints.

(Admin. Tr. 18).

The ALJ explained his consideration of Dr. Melcher's opinion as follows:

The assessments of the medical consultants for the State Agency are persuasive based on their consistency with the medical evidence of record described previously. These include the conclusions that the claimant can perform a range of light exertion with various postural and environmental restrictions, along with ability to understand, remember, and carry out simple instructions, make simple decisions with limited social interaction (Exhibit B2A). These physicians are well qualified to render an assessment of the claimant's functioning and they had the opportunity to review the medical record in its entirety, up to that point. Moreover, their opinions remain supported by the objective and clinical evidence of record. For instance, this residual functional capacity adequately considered the sleep study, musculoskeletal abnormalities upon examinations, and the need for injections. It further appears these consultants adequately considered the claimant's allegations , including his complaints of neck pain and headaches, difficulty getting along with others, and difficulty sustaining pace. Finally, the ability to lift,/carry/push/pull at the light level is consistent with the claimant's ADLs in conjunction with the other medical evidence.

(Admin. Tr. 18).

An ALJ's consideration of competing medical opinions is guided by the following factors: the extent to which the medical source's opinion is supported by relevant objective medical evidence and explanations presented by the medical source (supportability); the extent to which the medical source's opinion is consistent with the record as a whole (consistency); length of the treatment relationship between the claimant and the medical source; the frequency of

examination; the purpose of the treatment relationship; the extent of the treatment relationship; the examining relationship; the specialization of the medical source and any other factors that tend to support or contradict the opinion. 20 C.F.R. § 416.920c(c).

The most important of these factors are the "supportability" of the opinion and the "consistency" of the opinion. 20 C.F.R. § 416.920c(b)(2). The ALJ will explain how he or she considered the "supportability" and "consistency" of a medical source's opinion. The ALJ may, but is not required to, explain his or her consideration of the other factors unless there are two equally persuasive medical opinions about the same issue that are not exactly the same. 20 C.F.R. § 416.920c(b)(3). Unlike prior regulations, under the current regulatory scheme, when considering medical opinions, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 416.920c(a).

Plaintiff argues:

Despite finding Dr. Hartley's [sic] opinion to be persuasive to undermine the store manager's assessment and to find the State Agency administrative findings persuasive, without stating any qualification to his persuasiveness finding; yet, the ALJ failed to include all the mental limitations set forth therein, or explain their exclusion. Tr. 18-19, Specifically, Dr. Hartley [sic] opined that Plaintiff "required repetitive

Page 24 of 33

lessons and instructions," Tr. 362, and the state Agency administrative findings imposed a "1-2 step task" limitation. Tr. 117. The RFC does not include this very specific limitations and, most importantly for the purposes of judicial review, the ALJ never explained their exclusion. *See again Burnett*, 220 F.3d at 121 (ALJ must "give some indication of the evidence which [he] rejects and [his] reason(s) for discounting such evidence."). The ALJ's exclusion of limitations from opinions he found persuasive is reason enough for remand because, absent the required explanation, this reviewing court is left to guess as to whether the ALJ overlooked the limitations or ignored them. This makes meaningful judicial review impossible, since the Court cannot know, the ALJ's reasons for doing so since he did not include them. *Id.*, *and see also Fargnoli*, 247 F.3d at 44, n. 7.

This Court cannot, of course, know whether the ALJ simply forgot to include the limitations to repetitive lessons and instructions and/or 1-2 step tasks, or negligently excluded it, but the required result is the same: including *any* variation of these, even if slightly modified necessity [sic] results in a "new RFC" and no vocational evidence exists in this case to support a finding that Plaintiff is not disabled based on the new RFC. *Id.* To the extent any doubt remains, as Plaintiff will now show the jobs in question cannot meet the limitation to 1 to 2 step tasks.

(Doc. 16, pp. 12-13). Plaintiff then argues that the jobs cited by the ALJ at step five

all consist of more than 1 or 2 step tasks. (Doc. 16, pp. 13-15).

In response, the Commissioner argues:

The ALJ's analysis complies with the agency's revised regulations that state that the most important factors in evaluating the persuasiveness of an opinion are supportability and consistency. 20 C.F.R. § 416.920c(b)(2). Less important factors include, for example, the source's relationship with the claimant. 20 C.F.R. § 416.920c(c). After an ALJ *considers* the relevant factors for determining the persuasiveness of an opinion, the ALJ is not required to *explain* how he considered each of them. Instead, the ALJ must explain how he

considered the most important factors of supportability and consistency. *Id.*

The ALJ evaluated all of the medical opinions and prior administrative medical findings. He noted that although Dr. Hartey's opinion was not rendered in vocational-specific terms, the objective and clinical findings in her report were persuasive because Dr. Hartey had the opportunity to meet with Plaintiff and examine him, and it appeared that she adequately considered Plaintiff's subjective complaints (Tr. 18).

Plaintiff argues that the ALJ failed to incorporate all of Dr. Hartey's recommendations regarding activities that could benefit his memory functioning in the RFC assessment. The ALJ was not required to do so when finding Dr. Hartey's objective and clinical findings persuasive. The new regulations specifically state that, "it is not administratively feasible for [the ALJ] to articulate in each determination how [he] considered all of the factors for all of the medical opinions . . . in your case record." 20 C.F.R. § 416.920c(b)(1). The agency enacted these new regulations to reinforce a "reasonable articulation standard." 82 Fed. Reg. 5844-01, at 5858. Respectfully, additional articulation was not required. In any event, the ALJ's RFC assessment sufficiently addresses Plaintiff's memory difficulties by restricting Plaintiff to jobs that involve remembering just simple instructions with only occasional changes in the work setting (Tr. 15).

Plaintiff also argues that the ALJ omitted "a '1-2 step task' limitation" the state agency psychologist identified. (Pl.'s Br. at 12). Plaintiff has misread the opinion, which does not limit Plaintiff to one and two-step *tasks* but, rather, one and two-step *instructions* (Tr. 117-119). Specifically, Dr. Melcher opined that Plaintiff could understand and remember simple, one and-two step instructions and perform simple, routine, repetitive tasks (Tr. 117-19). The ALJ's RFC assessment accounted for these opinions by finding Plaintiff could understand, remember, and carry out simple instructions, and perform routine tasks (Tr. 15). Because simple instructions are those that involve one and two steps, the ALJ's limitation accounted for Dr. Melcher's opinion. The Court should reject Plaintiff's argument.

Page 26 of 33

(Doc. 17, pp. 22-24).

As noted by the Commissioner, the applicable regulation requires that the ALJ explain his or her consideration of supportability *and* consistency. As to his consideration of Dr. Hartey's opinion, the ALJ articulated his consideration of the examining relationship, but did not provide meaningful discussion of supportability to consistency. As to his consideration of Dr. Melcher's opinion, the ALJ considered consistency only and did not discuss supportability. Thus, Plaintiff is correct that the ALJ did not meet the articulation requirements of 20 C.F.R. § 416.920c. I am not, persuaded, however, that this error requires remand.

Plaintiff argues that this error resulted in prejudice because a limitation to 1 or 2 step tasks was improperly excluded from the RFC. Plaintiff has not demonstrated any reasonable possibility that the outcome of this case would be different but for the ALJ's articulation error. *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) (holding remand is not required unless there is reason to believe that it might lead to a different result); *see also Snedeker v. Colvin*, No. 3:13-CV-970, 2015 WL 1126598 at *7 (N.D. N.Y. Mar. 12, 2015) ("a reviewing court must reverse and remand when an administrative law judge errs when reaching a decision, unless, as a matter of law, the result could not be affected by the error. In other words, administrative legal error is harmless when a reviewing court confidently concludes

that the same result would have been reached had the error not occurred.") (internal citations omitted).

In the *Dictionary of Occupational Titles* ("DOT"), the general educational development of each occupation is described. "General educational development embraces those aspect of education (formal and informal) which are required of the worker for satisfactory job performance. DOT, Appendix C, 1991 WL 688702. The GED scale is composed of three divisions, but only one is relevant here—reasoning development. *Id.* In occupations with a reasoning development level of 1, satisfactory job performance requires that an employee be able to "[a]pply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." *Id.* "The plain language of the DOT definition for GED Reasoning Level 1 suggests there is no conflict between it and a limitation to no more than one- or two-step tasks. Furthermore, other courts have concluded that "a limitation to one to two-step tasks is consistent with GED Reasoning Development Level 1." *Wisziwaty v. Astrue*, 861 F. Supp. 2d 924, 946 (N.D. Ind. 2012) (collecting cases). Thus, a person limited to one- or two-step tasks *or* instructions could engage in work that requires a GED Reasoning Level of 1. In this case, even if a limitation to one or two step instructions were included in the ALJ's

Page 28 of 33

RFC assessment, Plaintiff would still be able to perform the occupation of cleaner/housekeeping, DOT #323.687-014.1991 WL 672783 (defining cleaner/housekeeper as having a GED reasoning development level of 1). The VE testified that there are 55,000 cleaner/housekeeping jobs available nation-wide. This occupation exists in significant numbers in the national economy.[3]

Accordingly, I am not persuaded that remand is required on this issue.

D.  WHETHER THE ALJ ADEQUATELY ACCOUNTED FOR PLAINTIFF'S ANGER OUTBURSTS IN THE RFC ASSESSMENT

In his decision, the ALJ noted that Plaintiff had "persistent issues with mood, anger, and cognitive difficulties, there was noticeable improvements managing these

---

[3] Under the Commissioner's regulations, "[w]ork exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which [the claimant] is able to meet with [his or he] physical or mental abilities and vocational qualifications." 20 C.F.R. § 416.966(b). "Isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where you live are not considered 'work which exists in the national economy.'" *Id.* However, there is no bright line rule as to the number of jobs are "significant." Neither Plaintiff nor the Commissioner have cited any authority on this issue. Courts have held that jobs in the national economy numbering in the low thousands is not a "significant number." *Alvarez v. Berryhill*, No. 1:16-CV-00707, 2017 WL 1709400, at *7-8 (M.D. Pa. May 3, 2017) (finding that 2,077 chaperone jobs in the national economy was not a significant number). Courts have found that 20,000 jobs or more is enough. *Young v. Astrue*, 519 F. App'x 769, 772 (3d Cir. 2013) (finding that 20,000 jobs is a significant number); *Brininger v. Berryhill*, No. 3:16-CV-00903, 2017 WL 3634187 at *15 (M.D. Pa. Aug. 7, 2017) (finding that 74,470 jobs is enough).

issues when in lower stress level situations with limited pressure." (Admin. Tr. 17).

The ALJ also noted:

> Mental status examinations found the claimant cooperative, alert, and
> oriented with appropriate hygiene and grooming, fairly good eye
> contact, increased motor activity, depressed to euthymic mood,
> appropriate affect, logical and goal directed thought process, intact
> associative thinking, intact memory, limited attention span, intact
> judgment and insight, decreased impulse control, and average to low
> intelligence and fund of knowledge (Exhibits B3F; B13F).

*Id.* The ALJ concluded that "[b]ased on this evidence, the restriction to simple

instructions with social limitations and avoidance of fast-paced work is warranted."

*Id.*

Plaintiff argues that his medically determinable severe impairment if

intermittent explosive disorder would result in him having one or more anger

outbursts at work per month. In support of his assessment, Plaintiff relies on: an

undated letter from Licensed Clinical Social Worker Kelly Maffia reporting that

Plaintiff "experiences persistent problems with his mood, anger, and cognitive

difficulties although has demonstrated improvements in the ability to manage these

issues when able to be in situations with lower stress levels and limited pressures."

(Admin. Tr. 485); (2) a November 14, 2018 treatment note where Plaintiff's chief

complaint was listed as "Mood swings and irritability," (Admin. Tr. 617); (3)

Plaintiff's testimony that, he was let got from a job after rehab without being told

why, Plaintiff speculated it was the result of several anger outbursts, (Admin. Tr. 48-51); (4) Plaintiff's testimony that he had been written up and disciplined for working too slowly or not performing his tasks satisfactorily, (Admin. Tr. 78); (5) an August 17, 2018 treatment note where Plaintiff told a provider that he had a "terrible temper" and was fired from his last job because he could not get along with coworkers, (Admin. Tr. 609); and (6) a check box on a the August 17, 2018 treatment record that Plaintiff had anger outbursts occurring twice weekly, on average, for a period of three months (which is one of the diagnostic criteria of IED), (Admin. Tr. 615).

The Commissioner responds:

> Plaintiff maintains that the ALJ should have included a limitation reflecting he would experience one angry outburst per month, a limitation that would result in no jobs according to the vocational expert (Pl.'s Br. at 17). But the ALJ was not required to include this limitation because he did not find it supported by the record. *See Salles*, 229 F. App'x at 147; *Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014). Indeed, despite his anger issues, Plaintiff arrived at medical appointments with fairly good eye contact and a calm, cooperative, and pleasant demeanor (Tr. 360, 369, 372, 375, 378, 394, 396, 398, 618, 620, 622). Nevertheless, the ALJ limited Plaintiff to work with reduced interactions with others. The Court should reject Plaintiff's argument.

(Doc. 17).

The Third Circuit commented that limitations are credibly established if they are "medically supported and otherwise uncontradicted." *Rutherford*, 399 F.3d at 554. In this case, the only evidence that supports Plaintiff's allegation that he would

have anger outburst more than once per month is a check-box treatment note addressing the diagnostic criteria of IED on Plaintiff's first visit to a new medical provider indicating Plaintiff would have two or more outbursts per week. (Admin. Tr. 615). This "check box" form is not medically supported by clinical observations. The letter from the social worker also could be reasonably interpreted as inconsistent with the allegation of two or more anger outbursts per week. Thus, I find that the twice weekly anger outbursts from the treatment note are not credibly established.

V.    CONCLUSION

Accordingly, Plaintiff's request for relief is DENIED as follows:

(1)    The final decision of the Commissioner will be AFFIRMED.

(2)    Final judgment will be issued in favor of the Commissioner of the Social Security Administration.

(3)    An appropriate order will be issued.

Date: January 28, 2022                    BY THE COURT

                                          *s/William I. Arbuckle*
                                          William I. Arbuckle
                                          U.S. Magistrate Judge

Page 32 of 33